CLAY, Circuit Judge,
dissenting.
A temporary involuntary detention or stop that is not based upon an officer’s “reasonable suspicion” violates the Fourth Amendment. United States v. Pearce, 531 F.3d 374, 380 (6th Cir.2008). An officer’s temporary involuntary stop of a citizen complies with the Fourth Amendment only if, first, the officer is justified to search or seize the citizen in the first place; and second, the scope of the search or seizure reasonably relates to the circumstances. Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868. An officer is justified to conduct a Tetry stop if the officer has a “reasonable suspicion to believe that criminal activity ‘may be afoot.’ ” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). An officer acts on reasonable suspicion if, based on the “totality of the circumstances,” the officer has a “particularized and objective” basis for suspecting legal wrongdoing. Id. (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The officer’s reasons for stopping a citizen must be “ ‘specific and articulable,’ ” and must amount to more than “ ‘an inchoate and unparticularized suspicion or hunch.’ ” United States v. Urrieta, 520 F.3d 569, 578 (6th Cir.2008) (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868).
The majority concludes that by the time Officer Carson detained Brown, she “had a number of particularized and objective bases for suspecting wrongdoing: Brown’s loitering in the parking lot; the time of night (after 8pm); the fact that she had made numerous arrests in that same parking lot; Brown’s failure to respond to or make eye contact with her; Brown’s attempting simply to walk away rather than respond; and Brown’s placing his hand over his back-right pocket as he walked *782 away.” Majority Op. at 780. The majority does not attempt to explain why these circumstances should cause suspicion, instead merely reciting them and then declaring that in their totality they created reasonable suspicion. However, a closer look at these reasons shows that even considering them in their totality, they do not form the basis for reasonable suspicion.
First, even if Brown violated a local ordinance by possessing an open beer container in the parking lot, the majority opinion does not explain why his presence in the lot, which it characterizes as “loitering,” might lead a reasonable officer to suspect criminal activity. Officer Carson testified that she had observed Brown and his companion in the lot “for a few seconds as I was driving up.” (Joint Appendix (“J.A.”) at 73.) Another witness at the suppression hearing offered unrebutted testimony that Brown had already been arrested just “two to three minutes” after he left the Y & M Foodmart. (J.A. at 78.) Officer Carson acknowledged that neither Brown nor his companion was doing anything “aggressive,” and that the only reason she told them to walk away was that she believed Brown’s open beer container violated the law. (J.A. at 58.) Thus, the record is clear that Brown could not have been in the parking lot for more than two or three minutes, and during that time was interacting with his friend without exhibiting any aggressive or unusual behavior. Even if such behavior can constitute “loitering,” it is hardly suspicious.
To the extent that the majority relies on Brown’s open beer container as a basis for finding his “loitering” suspicious, such a reason would be invalid. The relevant question is not whether Brown’s open container was illegal, but whether standing in a parking lot with an open beer container could be a basis for suspecting that further wrongdoing may be afoot. Evidently, Brown’s open beer container did not raise Officer Carson’s suspicions, because upon seeing it she simply told Brown and his companion to leave, and by her own account only became suspicious upon Brown’s subsequent behavior. Thus, Officer Carson’s own lack of suspicion further limits the importance of this factor.
Second, although “[a] late hour can contribute to reasonable suspicion ... our cases so holding typically involve a much later hour than [10:30 p.m.].” United States v. Blair, 524 F.3d 740, 751 (6th Cir.2008). Because Carson’s encounter occurred at the early evening hour of 8:00 p.m., the time of night is also of little weight in the “reasonable suspicion” analysis.
Third, Officer Carson’s prior experience arresting people at the parking lot in the past should not weigh heavily. This Court has been wary of considering that a Teri'y stop occurred in a “high crime area” as a factor justifying an officer’s suspicions, because this reason can be used to justify violating the Fourth Amendment in less affluent neighborhoods. See United States v. Caruthers, 458 F.3d 459, 468 (6th Cir.2006) (“ ‘Any person who happened to wander into a high-crime area, late at night, in the immediate aftermath of a serious crime, could be detained.’ ”) (quoting United States v. Woodrum, 202 F.3d 1, 7 (1st Cir.2000)). Here, we should be particularly skeptical, especially in light of Officer Carson’s professed, legally questionable policy of performing a pat-down “any time I have physical contact with anyone during any kind of investigation ... for my safety.” (J.A. at 54.) Such a statement does not inspire confidence that Officer Carson’s prior detainments in the parking lot reflected actual suspicion of criminal activity.
Fourth, there was nothing suspicious about Brown walking away from Officer *783 Carson, since Officer Carson in fact told him to walk away. While “unprovoked flight” may form the basis for reasonable suspicion, Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), a person need not respond to questions from an officer who has not detained him, and “his refusal to listen or answer does not, without more, furnish [reasonable suspicion] grounds.” Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); see also Caruthers, 458 F.3d at 466 (“[SJimply walking away from the police does not give rise to reasonable suspicion!.]”). Although Brown did not give his name when Officer Carson asked him for it, he was not being detained at that point and was under no obligation to give his name. The majority explains that Brown’s reticence stood in contrast to his companion, who chose to give his name to Officer Carson. However, the reaction of Brown’s companion does not shed any light on whether there was any reason to suspect Brown of criminal activity; the majority’s implication that Brown’s response might have been less suspicious had his companion responded differently ignores the requirement that the reasons for suspicion be objective.
The only facts that could have conceivably justified Officer Carson’s decision to detain Brown were Brown’s failure to make eye contact and the momentary movement of his hand to his back pocket as he was walking away, and these two facts by themselves cannot form the basis of reasonable suspicion. Although this Court has considered subtle hand movements and indications of nervousness as objective reasons for suspicion, we have typically done so only when those circumstances were present in combination with other factors. See United States v. Paulette, 457 F.3d 601, 606 (6th Cir.2006) (reasonable suspicion based upon suspect’s “hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area”); United States v. Mesa, 62 F.3d 159, 162 (6th Cir.1995) (“[Nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself.”). Although Brown failed to make eye contact with Officer Carson while she was informing him that his open beer container violated the law, this kind of encounter with an accusing police officer could cause any person to act nervously, whether or not that person was engaged in other criminal activity. Brown holding his hand over his back pocket as he was walking away, without more, cannot be considered a “furtive” movement; such a subtle movement cannot by itself justify an officer’s reasonable suspicion of criminal activity. See Caruthers, 458 F.3d at 466 (“Although the police may validly consider an individual’s furtiveness in deciding whether to conduct a Terry stop, courts must take care that the factor not be invoked cavalierly.”).
It is true that we must view the totality of the circumstances, and that we may find reasonable suspicion based on a combination of factors which by themselves might not create such suspicion. However, in this case we are faced with several reasons that are inappropriate to consider, and a few others that, even taken together, do not amount to anything more than an unsupportable hunch. See Urrieta, 520 F.3d at 578. For these reasons, I would find that Officer Carson did not have reasonable suspicion to seize Brown, and I would therefore reverse.